CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 01 2010

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:93-cr-00091 |
| | ) | |
| v. | ) | **§ 2255 MEMORANDUM OPINION** |
| | ) | |
| JULIEN K. DILKS, | ) | By: Hon. James C. Turk |
| Petitioner. | ) | Senior United States District Judge |

Julien K. Dilks[1], proceeding pro se, filed a motion to vacate, pursuant to 28 U.S.C. § 2255, seeking relief from his conviction petition via a writ of error coram nobis, pursuant to 28 U.S.C. § 1651(a) ("All Writs Act"). Dilks argues that the court wrongfully convicted him and should issue a writ of error coram nobis to vacate his conviction. After reviewing the record, the court finds that Dilks fails to state a claim upon which relief can be granted, and the court dismisses his petition for a writ of error coram nobis.

I.

On July 18, 1994, the court found Dilks guilty of bank fraud upon Jefferson National Bank and First Union Bank, in violation of 18 U.S.C. § 1344.[2] Dilks appealed to the Fourth Circuit Court of Appeals, which affirmed his conviction on October 10, 1995. United States v. Dilks, No. 94-5821, 1995 U.S. App. LEXIS 25970, *1 (4th Cir. Sept. 14, 1995). Dilks unsuccessfully argued that insufficient evidence existed to convict him and he should not have

---

[1] Dilks also signs his name as Julien Modica.

[2] Section 1344 states that:
  Whoever knowingly executes, or attempts to execute, a scheme or artifice –
  (1) to defraud a financial institution; or
  (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
  shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

been prosecuted under the bank fraud statute because one of the banks did not lose money. Id.

On February 6, 2001, Dilks moved to dismiss his bank fraud conviction. The court denied his motion to dismiss, and the Fourth Circuit Court of Appeals affirmed the court's dismissal and also denied Dilks' petition for rehearing.

A.

On December 13, 2007, Dilks filed his first petition for a writ of error coram nobis while a candidate for the United States Senate. (Pet. A (docket #61) 49). Dilks argued that the court committed error during his bench trial because the court did not accurately nor effectively consider Dilks' 1976 brain injury when determining his guilt. During oral arguments, Dilks alleged that his brain injury prevented him from both understanding the charges and presenting an adequate defense. Dilks also argued that his brain injury mitigated or eliminated his intent to defraud the banks. The court dismissed Dilks' petition after finding that he did not present credible evidence that the brain injury mitigated his intent to defraud the banks or rendered him incapable of presenting a defense or understanding the charges. The court also found that none of the alleged factual errors were of such a fundamental nature that the verdict would have been different had they been known.

B.

On February 12, 2009, Dilks filed a similar request titled, "Petition pursuant to Title 28 USCA Section 2255[,]" also requesting the court to issue a writ of error coram nobis.[3] Dilks stated that the President of the United States was considering appointing him as the Director of

---

[3]Similar to the disposition of the present petition, the court construed the filing as a petition for a writ of error coram nobis, pursuant to the All Writs Act because Dilks was not in custody when he filed the motion.

2

the National Institute on Disability and Rehabilitation Research, and Dilks incorporated the allegations made in his previous coram nobis petition. (Pet. B (docket #75) 2.)

Dilks argued again that "the fundamental error in this case is the understanding of the [e]ffect [the] brain injury and the demands of brain injury rehabilitation . . . had on [Dilks]." (Id. 4.) Dilks also alleged that First Union Bank did not present a prosecution witness because its employee said the bank's losses were not intentional. (Id.) Dilks further alleged that an exculpatory "presumption of regularity" existed because he used Montemezzi's account for four years without incident; Jefferson National Bank should be considered a utility instead of a governmental agency; and Jefferson National Bank should be partly responsible for his criminal acts. Dilks did not argue that the law changed to subsequently validate his unlawful conduct. The court dismissed the petition and cancelled the scheduled evidentiary hearing. Dilks appealed, and the Court of Appeals affirmed the dismissal and denied Dilks' request for a rehearing. United States v. Dilks, No. 09-6446, at 1 (4th Cir. Oct. 5, 2009).

C.

Dilks filed the instant petition on January 26, 2010, and states his intention to be a 2010 candidate for Virginia's Tenth Congressional District for the United States Congress. (Pet. C (docket #90) ¶ 33 n.37.) Dilks' relies on the present petition to "substantiate the argument laid out in petitioner[']s December 2007 coram nobis petition – perjured testimony was knowingly used by the prosecution." (Pet. C ¶ 5.) Dilks alleges that "the evidence regarding the acrimonious relationship between . . . [Dilks'] stepfather . . . and [Dilks] were known to the [Assistant United States Attorney ("AUSA")] at the July 1994 trial. [The AUSA] knew of the instability associated with [Dilks'] mental health status in 1992 and on July 18, 1994[,] [the

3

AUSA] offered a lie into evidence and pursued [Dilks] criminally where a civil judgment would have better served the government's interest." (Id. ¶ 14.) Dilks argues that the fundamental error in this case is the "understanding of the affect brain injury and the demands of brain injury rehabilitation have on the human condition and the affect it has had on [Dilks]." (Id. ¶ 16.) Dilks' stepfather, who testified on behalf of Dilks, did not testify about "such evidence." Dilks now believes that his step-father's failure to testify relates to accusation of stealing money from Pan-American Airlines and declaring bankruptcy. (Id. ¶ 17.) Dilks also complains that the court did not reference Dilks' brain injury in its "decision" and should not have relied on Dilks' notable professional and academic achievements. Dilks also challenges the sufficiency of the evidence presented at trial to sustain his conviction. (Id. ¶¶ 25-26.) Dilks further argues that recent advancements in medical care, recent wars, and proposed legislation support finding his traumatic brain injury/post-traumatic stress disorder/depression as reasons to vacate his decade-old conviction. (Id. ¶¶ 28-29, 32, 37, 40.) Dilks reasons that:

> [Twenty] years of brain injury rehabilitation could have affected [Dilks'] decisions/behavior leading up to his conviction, [and] the government determined that (1) the severe physical, cognitive, and emotional disability associated with brain injury and brain injury rehabilitation; (2) the lies, deception, and vindictive behavior of [his step-father] and Calvin Dilks following [petitioner's] brain injury; and (3) the physical and emotional injury [his stepfather] and Calvin Dilks caused involving a knife incident in September 2005 [and requiring hospitalization] are . . . sufficient reasons to question [his step-father's] motives [during his testimony]. . . .

(Id. ¶ 30.)[4]

---

[4]Dilks also argues that he filed a lawsuit in state court past the statute of limitations is indicative of lapses in mental health. (Id. ¶ 34.) However, the court finds this argument too tenuous to add any support to Dilks' conclusions.

II.

A.

Section 2255 provides that a person in <u>custody</u> under a federal sentence may move the court to vacate, set aside or correct his criminal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. However, Dilks is no longer within the custody of the United States for the judgment he seeks to vacate. Therefore, Dilks' is not eligible to proceed under that statute, and his motion to vacate, pursuant to 28 U.S.C. § 2255 is dismissed. Based upon the court's finding that the petitioner has not made the requisite substantial showing of denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability is denied. However, the court will liberally construe his motion as requesting a writ of error <u>coram nobis</u>. <u>See</u> <u>United States v. Nagaro-Garbin</u>, 653 F. Supp 586, 588-89 (E.D. Rich. Jan. 21, 1987) (treating section 2255 motion by INS detainee whose sentence had expired as motion for <u>coram nobis</u>).

B.

The court has the authority under the All-Writs Act to issue a writ of error <u>coram nobis</u>, which vacates a conviction after its sentence has been served. <u>United States v. Morgan</u>, 346 U.S. 502, 511 (1954). The court can only issue the writ, however, when there is a fundamental error resulting in conviction and no other means of relief is available. <u>United States v. Mandel</u>, 862 F.2d 1067, 1074-75 (4th Cir. 1988). But <u>see</u> <u>Carlisle v. United States</u>, 517 U.S. 416, 429 (1996) ("[I]t is difficult to conceive of a situation in a federal criminal case today where a writ of <u>coram nobis</u> would be necessary or appropriate."). The defendant has the burden of proof when a

collateral attack on a final conviction rests on constitutional grounds. Parke v. Raley, 506 U.S. 20, 30 (1992). See Jimenez v. Trominski, 91 F.3d 767, 768 n.6 (5th Cir. 1996) (stating that the burden placed on a petitioner seeking writ of error coram nobis exceeds the burden on a habeas petitioner); United States v. Stoneman, 870 F.2d 102, 106 (3d Cir. 1989) (same); Mandel, 862 F.2d at 1077 (Hall, J., dissenting) (same). See also Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977) (stating disposition of habeas motion presented to the sentencing judge can be based on his own recollections of the trial and the defendant). The court may consider sua sponte whether the extraordinary relief of a writ of error coram nobis is proper. See Kandiel v. United States, 964 F.2d 794, 796 (8th Cir. 1992). Ultimately, issuance of a writ of coram nobis lies within the discretion of the court. See Santos-Sanchez v. United States, 548 F.3d 327, 330 (5th Cir. 2008); Alikhani v. United States, 200 F.3d 732, 734 (11th Cir. 2000); United States v. Mandanici, 205 F.3d 519, 524 (2d Cir. 2000).

Dilks argues that the fundamental error in this case is the court's alleged lack of understanding of the impact his prior brain injury and his rehabilitation had on Dilks. (Pet. C ¶ 16.) Dilks' recitation of the same claims raised in his 2007 petition merit the same response: the alleged factual errors do not constitute a fundamental error to warrant vacating his conviction. Dilks' claim that his brain injury should excuse his criminal acts was insufficient for his first two petitions and, in light of his current allegations, remains insufficient to vacate his conviction under the present petition for the same previously stated reasons. Dilks' allegations of familial discord do not impact the evidence of his actions found during his trial upon which his conviction was based and affirmed.

Furthermore, Dilks' simple accusation that the AUSA "offered a lie into evidence" without any elaboration or offer of proof is insufficient to establish a fundamental error. A

plaintiff's basis for relief "requires more than labels and conclusions . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Therefore, the plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). However, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1950 (May 18, 2009). Thus, a court can identify pleadings that are not entitled to an assumption of truth because they consist of no more than labels and conclusions. Id. Moreover, it would not be proper to permit Dilks to litigate claims that were or could have been presented on his direct criminal appeal or post-conviction relief. See United States v. Wilson, 1996 U.S. App. LEXIS 2538, 1996 WL 71098 at *1 (4th Cir. Feb 7, 1996) (claims that could have been raised by direct appeal are outside scope of writ of error coram nobis); United States v. Keane, 852 F.2d 199, 202 (7th Cir. 1988) (claims that could have been raised by direct appeal are outside scope of writ of error coram nobis); Azzone v. United States, 341 F.2d 417, 419 (8th Cir. 1965) (per curiam) (coram nobis may not be used as substitute for appeal). Accordingly, Dilks fails to establish that his conviction resulted from a fundamental error, and the court dismisses his petition.[5]

III.

For the foregoing reasons, the court dismisses Dilks' motion to vacate, pursuant to 28

---

[5]The court also advises Dilks that abuse-of-the-writ principles apply to coram nobis relief. See United States v. Camacho-Bordes, 94 F.3d 1168, 1173 (8th Cir. 1996). However, the court does not presently rely on that principle to adjudicate the present petition. The United States argues in its motion to dismiss the abuse of the writ doctrine and also requests dismissal on the merits of petitioner's claims. Even if abuse of the writ applied in this case, it is clear that petitioner is not entitled to the relief he requests, and judicial economy warrants dismissal on the merits rather than seeking rebuttal for the abuse of the writ doctrine. See McCleskey v. Zant, 499 U.S. 467, 470 (1991) (discussing burden shifting for abuse of the writ doctrine).

7

U.S.C. § 2255, and his petition for a writ of error coram nobis.[6]

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the petitioner and counsel of record for the United States.

**ENTER**: This ____ day of February, 2010.

                                                    Senior United States District Judge

---

[6]The court also cancels the evidentiary hearing scheduled for April 7, 2010, because a hearing is not required when the record conclusively shows that the petitioner is not entitled to relief. See Fontaine v. United States, 411 U.S. 213, 215 (1973) (stating same in context of a § 2255 proceeding).

8