
CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 27 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Criminal Action No. 7:93-cr-00091** |
| | ) | |
| v. | ) | **§ 2255 MEMORANDUM OPINION** |
| | ) | |
| **JULIEN K. DILKS,** | ) | **By: Hon. James C. Turk** |
| Petitioner. | ) | **Senior United States District Judge** |

Julien K. Dilks[1], proceeding pro se, filed a motion to vacate, pursuant to 28 U.S.C. § 2255, seeking relief from his conviction via a writ of error coram nobis, pursuant to 28 U.S.C. § 1651(a) ("All Writs Act"). Dilks argues that the court wrongfully convicted him and should issue a writ of error coram nobis to vacate his conviction. After reviewing the record, the court dismisses his petition for a writ of error coram nobis because Dilks abuses the writ and presents meritless claims.

I.

On July 18, 1994, the court found Dilks guilty of bank fraud upon Jefferson National Bank and First Union Bank, in violation of 18 U.S.C. § 1344.[2] Dilks appealed to the Fourth Circuit Court of Appeals, which affirmed his conviction on October 10, 1995. United States v. Dilks, No. 94-5821, 1995 U.S. App. LEXIS 25970, *1 (4th Cir. Sept. 14, 1995). Dilks unsuccessfully argued that insufficient evidence existed to convict him and he should not have

---

[1] Dilks also signs his name as Julien Modica.

[2] Section 1344 states that:
  Whoever knowingly executes, or attempts to execute, a scheme or artifice --
  (1) to defraud a financial institution; or
  (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
  shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

been prosecuted under the bank fraud statute because one of the banks did not lose money. Id.

On February 6, 2001, Dilks moved to dismiss his bank fraud conviction. The court denied his motion to dismiss, and the Fourth Circuit Court of Appeals affirmed the court's dismissal and also denied Dilks' petition for rehearing.

A.

On December 13, 2007, Dilks filed his first petition for a writ of error coram nobis while a candidate for the United States Senate. (Pet. A (no. 61) 49). Dilks argued that the court committed error during his bench trial because the court did not accurately nor effectively consider Dilks' 1976 brain injury when determining his guilt. During oral arguments, Dilks alleged that his brain injury prevented him from both understanding the charges and presenting an adequate defense. Dilks also argued that his brain injury mitigated or eliminated his intent to defraud the banks. The court dismissed Dilks' petition after finding that he did not present credible evidence that the brain injury mitigated his intent to defraud the banks or rendered him incapable of presenting a defense or understanding the charges. The court also found that none of the alleged factual errors were of such a fundamental nature that the verdict would have been different had they been known.

B.

On February 12, 2009, Dilks filed a similar request titled, "Petition pursuant to Title 28 USCA Section 2255[,]" also requesting the court to issue a writ of error coram nobis.[3] Dilks stated that the President of the United States was considering appointing him as the Director of

---

[3]Similar to the disposition of the present petition, the court construed the filing as a petition for a writ of error coram nobis, pursuant to the All Writs Act, because Dilks was not in custody when he filed the motion.

the National Institute on Disability and Rehabilitation Research, and Dilks incorporated the allegations made in his previous coram nobis petition. (Pet. B (no. 75) 2.)

Dilks argued again that "the fundamental error in this case is the understanding of the [e]ffect [the] brain injury and the demands of brain injury rehabilitation . . . had on [Dilks]." (Id. 4.) Dilks also alleged that First Union Bank did not present a prosecution witness because its employee said the bank's losses were not intentional. (Id.) Dilks further alleged that an exculpatory "presumption of regularity" existed because he used Montemezzi's account for four years without incident; Jefferson National Bank should be considered a utility instead of a governmental agency; and Jefferson National Bank should be partly responsible for his criminal acts. Dilks did not argue that the law changed to subsequently validate his unlawful conduct. The court dismissed the petition and cancelled the scheduled evidentiary hearing. Dilks appealed, and the Court of Appeals affirmed the dismissal and denied Dilks' request for a rehearing. United States v. Dilks, No. 09-6446, at 1 (4th Cir. Oct. 5, 2009).

### C.

Dilks filed his third petition on January 26, 2010, and stated his intention to be a 2010 candidate for Virginia's Tenth Congressional District for the United States Congress. (Pet. C (no. 90) ¶ 33 n.37.) Dilks' relied on this petition to "substantiate the argument laid out in petitioner[']s December 2007 coram nobis petition – perjured testimony was knowingly used by the prosecution." (Id. ¶ 5.) Dilks alleged that "the evidence regarding the acrimonious relationship between . . . [Dilks'] stepfather . . . and [Dilks] were known to the [Assistant United States Attorney ("AUSA")] at the July 1994 trial. [The AUSA] knew of the instability associated with [Dilks'] mental health status in 1992 and on July 18, 1994[,] [the AUSA] offered a lie into

3

evidence and pursued [Dilks] criminally where a civil judgment would have better served the government's interest." (Id. ¶ 14.) Dilks argued that the fundamental error in this case was the "understanding of the affect brain injury and the demands of brain injury rehabilitation have on the human condition and the affect it has had on [Dilks]." (Id. ¶ 16.) Dilks' stepfather, who testified on behalf of Dilks, did not testify about "such evidence." Dilks believed that his stepfather's failure to testify relates to accusations of stealing money from Pan-American Airlines and declaring bankruptcy. (Id. ¶ 17.) Dilks also complained that the court did not reference Dilks' brain injury in its "decision" and should not have relied on Dilks' notable professional and academic achievements. Dilks also challenged the sufficiency of the evidence presented at trial to sustain his conviction. (Id. ¶¶ 25-26.) Dilks further argued that recent advancements in medical care, recent wars, and proposed legislation support finding his traumatic brain injury/post-traumatic stress disorder/depression as reasons to vacate his decade-old conviction. (Id. ¶¶ 28-29, 32, 37, 40.) Dilks reasoned that:

> [Twenty] years of brain injury rehabilitation could have affected [Dilks'] decisions/behavior leading up to his conviction, [and] the government determined that (1) the severe physical, cognitive, and emotional disability associated with brain injury and brain injury rehabilitation; (2) the lies, deception, and vindictive behavior of [his step-father] and Calvin Dilks following [petitioner's] brain injury; and (3) the physical and emotional injury [his stepfather] and Calvin Dilks caused involving a knife incident in September 2005 [and requiring hospitalization] are . . . sufficient reasons to question [his step-father's] motives [during his testimony]. . . .

(Id. ¶ 30.)[4]

The court noted in its memorandum opinion dismissing the petition that the abuse of the writ doctrine applies to petitions for a writ of error <u>coram nobis</u>. The court advised Dilks of the

---

[4] Dilks also argued that the fact that he filed a lawsuit in state court beyond the statute of limitations is indicative of lapses in mental health. (Id. ¶ 34.) However, the court found this argument too tenuous to support his conclusion.

4

shifting burden for the abuse of the writ defense.

D.

In his instant petition, Dilks asks the court to vacate his conviction because of events unrelated to his trial and involving federal politicians. (Pet. D. (no. 96)) Dilks compares his conviction for bank fraud to the alleged bank-kiting scandal from the House of Representatives of the United States Congress during the late 1980s and early 1990s. For example, Dilks alleges that Representative Duncan L. Hunter "kited" at least 160 checks and former Representative Robert Mrazek "kited" 213 checks. (Pet. D. ¶¶ 45-46.) Dilks complains that these politicians were not charged with bank fraud although he was indicted, tried, and convicted of a substantially similar act. Dilks argues that allowing him to suffer the collateral consequences of his felony conviction is unfair because federal politicians were not similarly charged with bank fraud.[5]

The United States filed a response to the instant petition, arguing that Dilks' claims are defaulted because he raises new claims that could have been raised in prior petitions. The United States further argues that the claims are meritless and should be dismissed. The United States also requested a pre-filing injunction to prevent Dilks from filing more repetitive <u>coram nobis</u> petitions.

On October 20, 2010, the court entertained oral argument from Dilks and the United States about the instant petition. Dilks argued that two standards of justice relevant to enforcement of the bank fraud statute existed: one for him and another for federal politicians. Dilks believes that the discrepancy between his prosecution and the lack of other prosecutions is an abuse of the government's power, in violation of the Fifth Amendment. Dilks acknowledged

---

[5]Dilks also alleges that the AUSA knowingly submitted to the court false information that had a material affect on the court's decision. (Pet. D. ¶ 63.)

that the instant petition was his fourth and that he read the United States' response to his petition; however, he did not explain why he did not previously raise the instant claims.

A few days after the hearing, Dilks filed a reply to the United States' response. Dilks acknowledges that the instant petition is his fourth and the claims raised in the instant petition are completely different than the claims in earlier petitions. Dilks argues that his newly discovered evidence of Congressional check kiting should excuse his default. Dilks further states that his "previous three Coram Nobis petitions . . . have provided [him] with a stage in which to use the Judiciary as a public policy making instrument."

II.

A.

Section 2255 provides that a person in custody under a federal sentence may move the court to vacate, set aside or correct his criminal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. However, Dilks is no longer within the custody of the United States for the judgment he seeks to vacate. Therefore, Dilks is not eligible to proceed under that statute, and his motion to vacate, pursuant to 28 U.S.C. § 2255 is dismissed. Based upon the court's finding that Dilks has not made the requisite substantial showing of denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability is denied. However, the court liberally construes his motion as requesting a writ of error coram nobis. See United States v. Nagaro-Garbin, 653 F. Supp 586, 588-89 (E.D. Va. Jan. 21, 1987) (treating § 2255 motion by INS detainee whose sentence had expired as a petition for a writ of error coram nobis).

B.

The court has the authority under the All-Writs Act to issue a writ of error coram nobis, which vacates a conviction after its sentence has been served. United States v. Morgan, 346 U.S. 502, 511 (1954). The court can only issue the writ, however, when there is a fundamental error resulting in conviction and no other means of relief is available. United States v. Mandel, 862 F.2d 1067, 1074-75 (4th Cir. 1988). But see Carlisle v. United States, 517 U.S. 416, 429 (1996) ("[I]t is difficult to conceive of a situation in a federal criminal case today where a writ of coram nobis would be necessary or appropriate."). The defendant has the burden of proof when a collateral attack on a final conviction rests on constitutional grounds. Parke v. Raley, 506 U.S. 20, 30 (1992). See Jimenez v. Trominski, 91 F.3d 767, 768 n.6 (5th Cir. 1996) (stating that the burden placed on a petitioner seeking writ of error coram nobis exceeds the burden on a habeas petitioner); United States v. Stoneman, 870 F.2d 102, 106 (3d Cir. 1989) (same); Mandel, 862 F.2d at 1077 (Hall, J., dissenting) (same). See also Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977) (stating disposition of habeas motion presented to the sentencing judge can be based on his own recollections of the trial and the defendant). The court may consider sua sponte whether the extraordinary relief of a writ of error coram nobis is proper. See Kandiel v. United States, 964 F.2d 794, 796 (8th Cir. 1992). Ultimately, issuance of a writ of coram nobis lies within the discretion of the court. See Santos-Sanchez v. United States, 548 F.3d 327, 330 (5th Cir. 2008); Alikhani v. United States, 200 F.3d 732, 734 (11th Cir. 2000); United States v. Mandanici, 205 F.3d 519, 524 (2d Cir. 2000).

"The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition . . . ."

that collaterally attacks the same conviction. McCleskey v. Zant, 499 U.S. 467, 470 (1991). See United States v. Camacho-Bordes, 94 F.3d 1168, 1173 (8th Cir. 1996) (acknowledging abuse of the writ doctrine applies to coram nobis petitions). The petitioner must show cause and prejudice or a fundamental miscarriage of justice to excuse a failure to raise the claim earlier to avoid dismissal as an abuse of the writ. Id. at 494-95. See Murray v. Carrier, 477 U.S. 478, 491 (1986); Miller v. Bordenkircher, 764 F.2d 245, 250 n.5 (4th Cir. 1985) (discussing abuse of the writ doctrine in the context of 28 U.S.C. § 2254). See also LaRette v. Bowersox, 70 F.3d 986, 987 (8th Cir. 1995) ("To excuse an abuse of the writ, a successive habeas petitioner must show either cause and prejudice, or probable actual innocence."). In order to satisfy the "cause" requirement, a petitioner must show that some external impediment prevented him from presenting his claim in a timely and procedurally proper manner. See Noble v. Barnett, 24 F.3d 582, 586 (4th Cir. 1994). The cause inquiry focuses on whether the petitioner was prevented from including a particular claim in his most recent petition. See id. (holding that the claims presented in applicant's third habeas petition were barred by the abuse of the writ doctrine because applicant "had full knowledge of the facts central to each of these claims at the time that he filed his second petition for a writ of habeas corpus"). See also Washington v. Delo, 51 F.3d 756, 761 (8th Cir. 1995) (stating a court does not need to review the alternate prong when petitioner fails to establish one prong).

Dilks acknowledges that he is now presenting an entirely new claim. However, the events of which Dilks presently complains occurred long before he filed the instant petition. It is plainly obvious that Dilks could have argued for nearly two decades of the events to which he now compares his situation. Despite being twice advised that the abuse of the writ doctrine bars

8

consideration of the instant petition, Dilks fails to excuse his procedural default. His claim of "newly discovered evidence" does not constitute cause because he failed to exercise due diligence to discover and plead Congressional check kiting in his first coram nobis petition. See, e.g., 28 U.S.C. §§ 2244(b)(2)(B), 2255(f)(4). Furthermore, Dilks' arguments about politicians' unindicted acts do not constitute a fundamental miscarriage of justice. See McClesky, 499 U.S. at 494 (defining a fundamental miscarriage of justice as "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime."). Accordingly, the court finds that Dilks abuses the writ and dismisses the petition.

Moreover, even if the petition was not barred as an abuse of the writ, Dilks's instant claims lack merit. The circumstances surrounding politicians' acts are not relevant to his unlawful conduct or prosecution. Moreover, Dilks's conclusory allegation of selective prosecution or the AUSA's alleged misrepresentations do not warrant an assumption of truth or further consideration from the court.[6] A petitioner's basis for relief "requires more than labels and conclusions . . . .[,]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and a petitioner must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Determining whether a petition states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1950 (May 18, 2009). Thus, the court can identify assertions, like Dilks's claims of selective

---

[6]Indeed, the court already advised Dilks of this fact in its prior memorandum opinion after he presented the same claim in the prior petition. Furthermore, this claim, like any other repetitive claim already adjudicated in his prior petitions, are barred by res judicata. See Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 210 (4th Cir. 2009).

prosecution and misrepresentations by the AUSA, that are not entitled to an assumption of truth because they consist of no more than labels and conclusions. See id. Moreover, it would not be proper to permit Dilks to litigate claims that were or could have been presented on his direct criminal appeal or via post-conviction relief. See United States v. Wilson, 1996 U.S. App. LEXIS 2538, 1996 WL 71098 at *1 (4th Cir. Feb 7, 1996) (unpublished) (claims that could have been raised by direct appeal are outside scope of writ of error coram nobis); United States v. Keane, 852 F.2d 199, 202 (7th Cir. 1988) (claims that could have been raised by direct appeal are outside scope of writ of error coram nobis); Azzone v. United States, 341 F.2d 417, 419 (8th Cir. 1965) (per curiam) (coram nobis may not be used as substitute for appeal).

III.

For the foregoing reasons, the court dismisses Dilks' motion to vacate, pursuant to 28 U.S.C. § 2255, construes his request as a petition for a writ of error coram nobis, and dismisses that request.[7]

The court takes notice of Dilks's repeated filings with the court. Federal courts may issue prefiling injunctions when vexatious filings hinder the court from fulfilling its constitutional duty. Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 817 (4th Cir. 2004). Before enjoining the filing of further petitions, however, the court must afford Dilks notice and opportunity to be heard. Id. at 819. Accordingly, Dilks is given notice of the court's intent to enter a prefiling injunction against him, and he may submit opposing written argument within ten days.

---

[7] Dilks is advised that he may seek a Presidential Pardon via a petition to the Office of the Pardon Attorney at the Department of Justice or restoration of civil rights from the Governor of Virginia via a petition to the Secretary of the Commonwealth.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the petitioner and counsel of record for the United States.

**ENTER**: This 27th day of October, 2010.

/s/ James C. Turk
Senior United States District Judge